**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————————
                                                    :
NORTHEAST REGIONAL COUNCIL OF    :
CARPENTERS and NEW JERSEY        :
CARPENTERS FUNDS and the         :
TRUSTEES THEREOF,                :
                                 :
            Petitioners/Plaintiffs,    :
                                 :        Civ. Action No.: 15-0047(FLW)(LHG)
        v.                       :
                                 :               **OPINION**
KRS CONSTRUCTION GROUP, LLC      :
d/b/a CANAL DRIVE CONSTRUCTION,  :
INC. d/b/a DOUBLE E SERVICES LLC, :
et al.                           :
                                 :
            Defendants.          :
—————————————————————    :


**WOLFSON, United States District Judge:**

    Petitioner Northeast Regional Council of Carpenters and the New Jersey Carpenters

Funds and the trustees thereof ("the Union" or "Petitioners") initiated this action to obtain

confirmation of an arbitration award rendered against Defendant KRS Construction ("KRS")

doing business as Canal Drive Construction ("Canal Drive") (collectively "Respondents") in

connection with an alleged violation of a Collective Bargaining Agreement ("CBA") between the

parties. The Union contends that KRS violated the CBA by conducting business as Canal Drive,

an alleged alter ego entity, and not hiring union member carpenters. KRS opposes the petition

and argues that that: (1) Petitioners violated 9 U.S.C. Section 4 by proceeding to arbitration

without KRS present and by failing to file a motion to compel the arbitration; (2) the CBA was

not in effect at the time of the alleged violation; (3) the CBA lacks necessary language to allow

the court to confirm arbitration; (4) petitioners failed to follow the "steps" required under article XVII of the CBA prior to requesting arbitration.

For the reasons detailed herein, Petitioners' Motion to Confirm the Arbitration Award is granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

### A. The Arbitration Record

Petitioner is the regional Carpenters Union, and the authorized bargaining agent for carpenters, millwrights, lathers, and all others who perform work in the jurisdiction of the United Brotherhood of Carpenters and Joiners of America in this area. Respondent KRS Construction group is an incorporated carpentry contractor. Canal Drive is an incorporated entity which does construction work. Both companies were, or are, run by the same family, the Engelkens. *See* Certification of Catherine Engelken ¶¶ 2, 4, 6.

KRS and Petitioner are signatories to a Short Form Agreement ("SFA") signed on November 14, 2002. (Pet. to Confirm Arbitration Award and Entry of J. and Compl. [hereinafter "Pet."], Ex. A [hereinafter "SFA"]). The SFA states three points relevant here: (1) it "govern[s] any corporation, partnership or sole proprietorship which is deemed to be a controlled entity under the Internal Revenue Code or which is a successor to, joint employer with, or alter ego of the undersigned contractor"; (2) that "the permanent arbitrator . . . shall herein decide all matters concerning wages and benefits and all matters concerning procedural or substantive arbitrability"; (3) and that the SFA "shall continue in full force and effect from year to year unless at least 90 days before termination of the then current collective bargaining agreement either party notifies the other in writing . . . of cancellation of this agreement." (*Id.*).

2

Further, the SFA incorporates "every applicable current CBA between the State Council of Carpenters, Regional Council of Carpenters, or other local Carpenters Unions affiliated with the United Brotherhood of Carpenters and Joiners of America and the Building Contractors Association of New Jersey, governing wages, working conditions and payments to fringe benefits funds, which agreements are incorporated by reference." (SFA and CBA collectively the "Agreement") (*Id.*; Certification of Bradley M. Parsons Ex. B at 1 [hereinafter "Successive CBAs"].) By signing and accepting the terms of the SFA, KRS was agreeing to be bound to all successive CBAs as a contractor. (SFA.)  Cover pages of the Successive CBAs indicate that each CBA is an agreement by and between the Northeast Regional Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America, the Building Contractors Association of New Jersey, the Associated General Contractors of New Jersey, the Drywall & Interior Systems Contractors Association, Inc. of New Jersey, and the Construction Contractors Labor Employers. (Successive CBAs at 1, 47, 85.) Three subsequent CBAs became effective between the Union and KRS during the relevant dates: (1) the CBA in effect from May 1, 2002 through April 30, 2007 (*id.* at 1); (2) the CBA in effect from May 1, 2007 through April 30, 2012 (*id.* at 47); (3) and the current CBA which is dated as effective from May 1, 2013 through April 30, 2016 (*id.* at 85). Each CBA contains language which prohibits an employer from subcontracting "any work within the jurisdiction of the Union . . . except to a contractor who holds an agreement with the United Brotherhood of Carpenters and Joiners of America . . . or who agrees in writing" to be bound by the CBA. (*Id.* at 22, 41, 62). The same Article prohibits the employer from forming "new or double-breasted corporations for the purposes of avoiding the obligations of this Agreement." (*Id.*).

On or about September 27, 2011, a union representative allegedly witnessed KRS employees performing CBA-covered work at a job in Manalapan, New Jersey, under the company name Canal Drive. (Arbitrator's Op. at 6.) Following this discovery, and suspecting Canal Drive was an "alter ego" entity of KRS, the Union issued correspondence to KRS and Canal Drive at their shared address in compliance with the four steps defined in Article XVIII[1] of the CBA, to be followed when a grievance such as this arises between the parties (Successive CBAs, CBA Effective 5/1/2017–4/30/2012, at 14–15; Certification of Bradley M. Parsons, Ex. H [hereinafter "Grievance Step Procedure Notices"]; Arbitrator's Op. at 6–7). After the Union had satisfied grievance resolution steps I–III, the Union, in compliance with step IV, made a request on October 25, 2011 that Arbitrator J.J. Pierson, Esq., hold an arbitration hearing to determine if

---

[1]    Step I: Between the company representatives and the business representative at the job site as soon as practical but in no event later than three working days after the occurrence of the dispute. Failure to raise any dispute within three working days of its notification, renders the dispute null and void.

Step II: If not resolved pursuant to Step I, then between the Manager of the Region where the job is located, or a designee, and a company officer at the job site. This meeting should be arranged as soon as practical but in no event later than three working days after the conclusion of Step I.

Step III: if not resolved pursuant to Step II, then between the Executive Secretary/ Treasurer of the Regional Council, or a designee, and a company officer at the job site. This meeting should be arranged as soon as practical but in no even later than three working days after the conclusion of Step II.

Step IV: If the parties are unable to affect an amicable settlement or adjustment of any grievance or controversy, such grievance or controversy shall be submitted to binding arbitration under the Expedited Rules of the American Arbitration Association at the request of either party provided notice in writing of the intent to do so is given through the other party and the American Arbitration Association within thirty-five working days after Step III has been completed. [The Arbitrator's] . . . decision will be final and biding on the contract to the Union and all employers.

[Successive CBAs at 23.]

4

KRS had violated the Agreement. (Grievance Step Procedure Notices at 11). Accordingly, an arbitration hearing was scheduled for November 10, 2011. (*Id.* at 10). However, before the scheduled arbitration hearing, KRS, allegedly d/b/a Canal Drive, completed the disputed job in Manalapan, New Jersey. *Id.* Following the completion of this job, the Union found KRS to have gone "off the radar," "could not be found," and the Union concluded KRS was "'inactive' and out of business." (Arbitrator's Op. at 5.) No arbitration hearing was held.

Several years later, on August 11, 2014, the Union became aware that KRS was again doing business as Canal Drive and performing CBA-covered work at a job in Paramus, New Jersey in violation of the SFA. (Arbitrator's Op., p. 6.) Because the Union had already completed steps I–III of the CBA's grievance procedures after KRS' 2011 work as Canal Drive was discovered, the Union bypassed the first three steps and proceeded with step IV on August 29, 2014 by requesting another arbitration hearing. (Certification of Bradley M. Parsons, Ex. I. [hereinafter "Notice of Arbitration, August 29, 2014"]).

Arbitrator Pierson convened a hearing on September 18, 2014 to consider the issue of whether KRS Construction, doing business as Canal Drive Construction, violated CBA Article XIX's prohibition on the use of alter ego or double breasted entities to avoid the CBA's terms, by performing CBA-covered work through Canal Drive at the Paramus, New Jersey job site. (Arbitrator's Op., p. 1.) Neither KRS nor Canal Drive attended the arbitration hearing despite notice being issued by Arbitrator Pierson. (*Id.* at 11; Notice of Arbitration, August 29, 2014.). On October 9, 2014, Arbitrator Pierson issued an arbitration award against KRS. Pet. at 1.

**B. The Arbitrator's Findings**

At the September 18, 2014 arbitration hearing, Arbitrator Pierson considered testimony of witnesses and twenty-five exhibits submitted by the Union. Additionally, Pierson considered a prior grievance which culminated in an arbitration proceeding between the Union and KRS.[2]

In the current arbitration matter, after considering all of the material submitted by the Union, Arbitrator Pierson concluded that the Union had satisfied its burden of proving that KRS and Canal Drive were signatories to the SFA and therefore obligated to employ union member carpenters for work within the CBA's jurisdiction. Pierson further found that KRS and its principle agent Kirk Engelken violated CBA Article XIX § 4 by both creating Canal Drive and by failing to employ union carpenters at the Paramus, New Jersey job site. (Arbitrator's Op. at 12). Arbitrator Pierson stated that the Union's evidence "clearly and convincingly" established that "by [KRS] failing to employ [u]nion [c]arpenters, Canal, as a 'double-breasted' entity of KRS, caused a loss of work opportunity for Council Carpenters and monetary damages for lost work opportunity." (*Id.*)

Based on these findings, Arbitrator Pierson awarded and ordered the following on October 9, 2014:

1. KRS Construction, found to be a "double breasted" employer participating with Canal Drive Construction, violated the Collective Bargaining Agreement by failing to apply its terms and conditions for work performed on the "LA Fitness," Paramus, New Jersey job site and, as a result, shall be liable to Northeast Regional Council of Carpenters and the New Jersey Carpenters Funds for lost work opportunity

2. KRS Construction is liable to Northeast Regional Council of Carpenters and the New Jersey Carpenters Funds in the total amount of **$198,494.40** for lost work

---

[2] This prior arbitration resulted in the finding that KRS had violated Article XIX of the CBA by doing business as "Double E Services" and failing to employ Union-member carpenters. (Arbitrator's Op. at 3-4, Exs. U-7, U-9). In that matter, Arbitrator Pierson awarded the Union $482,769.43, on January 16, 2011, and the matter was subsequently confirmed by the United States District Court for the District of New Jersey on March 29, 2011. (Certification of Bradley M. Parsons, Ex. E, at 2.)

opportunities, lost wages and lost benefits for work performed on the "LA Fitness," Paramus, New Jersey as a result of violations of the agreement

      a. KRS Construction shall make payment to the Northeast Regional Council of Carpenters in the amount of **$127,233.60** for lost wages

      b. KRS Construction shall make payment to the New Jersey Carpenters Funds in the amount of **$71,260. 80** for lost benefit contributions

3. KRS Construction shall reimburse the Council for one-half to the Arbitrators total fee of $3,800 (for hearing of September 28, 2014; study of record/writing and preparation of Award and Order). Payment of **$1,900.00** by KRS Construction to the Union shall be deemed an obligation imposed by this Award pursuant Article XVIII(9) of the Agreement which states "9. Each party shall share equal the expenses of the arbitrator."
. . .

5. In addition, the Trustees of the Funds, in their discretion, may cause an audit to be made of the payrolls and such other records of KRS Construction as are considered pertinent by the Trustees and KRS Construction shall immediately cooperate in the performance of the audit. The Funds may commence the audit within 30 days from the date of this award.

6. This arbitrator shall retain jurisdiction of this matter in the event of any dispute of any issue relating to or arising from the interpretation or application of this Order.

(Arbitrator's Op. at 12–13.)

Petitioners filed the present petition to confirm the arbitration award on January 5, 2015.

Respondents oppose the Motion.


## II.    STANDARD OF REVIEW.

When parties agree through a Collective Bargaining Agreement to settle future disputes through arbitration, the court's review of the resulting arbitration decision is "extraordinarily limited." *Dauphin Precision Tool v. United Steelworkers of America*, 338 Fed. App'x 219, 222 (3d Cir. 2009) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). The Supreme Court has divided the review of challenges to arbitration decisions into two categories: those that consist of challenges to substantive arbitrability, that is, a "challenge [to] the validity of the agreement to arbitrate," and challenges which involve procedural issues,

or a "challenge [to] the contract as a whole." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The distinction between these challenges is significant because substantive challenges must go before a judge, while procedural challenges are within the jurisdiction of the arbitrator. *Id.*; *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. at 79–80 (2002) (finding that a "dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide" and that "'procedural questions' are . . . for an arbitrator to decide."); *Buckeye*, 546 U.S. at 440 ("unless a challenge involving a contract with an arbitration clause is to the contract's arbitration clause itself, the issue of the contract's validity is to be considered by the arbitrator in the first instance."); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 543 ("'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *New Jersey Bldg. Laborers Statewide Benefits Fund and the Trustees Thereof v. Am. Coring & Supply et al.*, 341 Fed. App'x 816, 818 (3d Cir 2009) (reasoning that because of the "severable nature" of an arbitration clause, challenges to arbitrability are reserved for the court, while arguments that attack the contract as a whole must be presented to an arbitrator).

As a result of this limited form of review, a court may not review the merits of the Arbitrator's decision, correct factual or legal errors, or overrule an arbitrator's award simply because it differs with the arbitrator's interpretation of the contract. *W.R. Grace & Company v. Rubber Workers Local*, 461 U.S. 757, 764 (1983); *Dauphin Precision Tool*, 338 Fed. App'x at 222. Rather, the court "must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and . . . may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement." *Dauphin Precision Tool*, 338 Fed. App'x at 222 (quoting *Exxon Shipping Co. v. Exxon Seamen's*

*Union*, 73 F.3d 1287, 1291 (3d Cir. 1996)). In addition, the court may overturn an arbitration award if "the arbitrator fails to adhere to basic principles of contract construction." *Cacace Assocs., Inc. v. S. New Jersey Bldg. Laborers Dist. Council*, No. 3:07-cv-5955, 2009 WL 424393, *3 (D.N.J. Feb 19, 2009) (citing *News Am. Publ'ns, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 921 F.2d 40, 41 (3d Cir. 1990); *Exxon Shipping Co.*, 801 F. Supp. at 1384); *see United Paperworkers Int'l Union v. Misco*., Inc., 484 U.S. 29, 40 (1987) (reasoning that an arbitrator's award will be set aside on procedural grounds only when arbitrator's error was in bad faith or "so gross as to amount to affirmative misconduct").

The Federal Arbitration Act ("FAA") defines the "exceedingly narrow circumstances" under which a district court may vacate an arbitration award:

> (1) Where the award was procured by corruption, fraud or undue means; 2) where there was evident partiality or corruption in the arbitrators, or either of them; 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

> [9 U.S.C. §10(a); *see also New Jersey Carpenters Funds v. Professional Furniture Services, No. 3:08-3690*, 2009 WL 483849, *2 (D.N.J. Feb. 25, 2009) (quoting 9 U.S.C. §10(a))].

Thus, a district court must uphold an arbitration award "so long as it draws its essence from the [CBA]" and is not merely the arbitrator's "own brand of industrial justice." *Veeder Root Co. v. Local 6521*, 293 Fed. App'x 924, 925 (3d Cir. 2008) (quoting *USWA v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). Courts will even rely on an arbitrator's factual findings when they are viewed as "silly or improvident," and courts will confirm an award when it has "misgivings" about the award or where the award is "dubious." *United Paperworkers Int'l Union*,

484 U.S. at 39; *Teamsters Local No. 115 v. DeSoto, Inc.*, 705 F.2d 931, 935 (3d Cir. 1984); *Kane Gas Light & Heating Co. v. Int'l Bhd. Of Firemen & Oilers*, 687 F.2d 673, 679 (3d Cir. 1982), *cert. denied* 460 U.S. 1011 (1983). Therefore, because "it is not within the province of the court to substitute its judgment for that of an arbitrator's, however injudicious it may be," this court is obligated to uphold the arbitrator's award if the decision was drawn from "a reasonable contractual interpretation" of the parties Collective Bargaining Agreement. *Cacace Assocs.*, 2009 WL 424393, *9 (D.N.J. Feb 19, 2009)*; see Dauphin Precision Tool*, 338 Fed. App'x. at 219; *United Trans. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379 (3d Cir. 1995).

## III.   DISCUSSION

Petitioners initiated the present action before this court to confirm Arbitrator Pierson's October 9, 2014 award against KRS in the amount of $198,494.40. Respondents oppose the confirmation of Petitioners' motion based on the following assertions: (1) Petitioners violated 9 U.S.C. § 4 by proceeding with arbitration without KRS present; (2) the CBA was not in effect at the time of the alleged violation; (3) the CBA lacks necessary language to allow a court to confirm arbitration; (4) petitioners failed to follow the "steps" required under article XVII of the CBA prior to requesting arbitration. Respondents' arguments (2), and (4) are procedural challenges, and argument (3) is a substantive arbitrability challenge. The alleged violation of the Federal Arbitration Act, however, is a threshold issue that must be addressed separately.

## A. 9 U.S.C. § 4

Respondents, following Petitioner's request for arbitration, advised Petitioner that they did not agree that they were subject to the CBA; Petitioner nonetheless proceeded with the arbitration *ex parte*. Resp. Opp. at 8. Respondents assert that Petitioner was required to file a

motion to compel arbitration, and that its failure to do so violated Section 4 of the FAA, which

states:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any United States district court which, save for such
> agreement, would have jurisdiction under title 28, in a civil action
> or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties for an order directing that such
> arbitration proceed in the manner provided for in such agreement.

[9 U.S.C. § 4].

Although the Third Circuit has not weighed in on the matter, courts in multiple

jurisdictions have held that where a collective bargaining agreement so permits, the party seeking

arbitration may proceed ex parte if the other party fails to respond, without first seeking a court

order. *See Toyota of Berkeley v. Auto. Salesman's Union, Local 1095, United Food &*

*Commercial Workers Union*, 834 F.2d 751, 754, 755 (9th Cir. 1987) *amended*, 856 F.2d 1572

(9th Cir. 1988) (stating that "Under a collective bargaining agreement specifically providing for

designation of an arbitrator without the participation of both parties, an arbitrator may issue an

enforceable default award when one party fails to attend the hearing," and that the Union was not

"required to seek a court order requiring arbitration."); *Corallo v. Merrick Cent. Carburetor, Inc.*,

733 F.2d 248, 251 n.1 (2d Cir. 1984) ("the weight of authority seems to be that, where, as here,

the objecting party is not required to participate in the selection of the arbitrator, the arbitrator,

otherwise properly designated, may proceed in the objecting party's absence"); *Standard*

*Magnesium Corp. v. Fuchs*, 251 F.2d 455, 456 (10th Cir. 1957) (holding if an arbitration provides

"where one party refuses or fails to submit to arbitration, that an arbitrator may be appointed and

that the arbitration may proceed ex parte, and further provides for the procedure to be followed in

such an ex parte proceeding, there is no occasion to invoke the remedy of § 4"); *Kentucky River*

*Mills v. Jackson*, 206 F.2d 111, 118 (6th Cir. 1953) (holding that 9 U.S.C. § 4 "does not require resort to enforcement provisions if an ex parte arbitration is permitted by terms of the arbitration agreement."); *see also A/S Ganger Rolf v. Zeeland Transp., Ltd.*, 191 F. Supp. 359 (S.D.N.Y. 1961) ("The petitioners may proceed under the terms of the arbitration agreements without any action of the court and such action is not required in order to make the arbitration agreements effective"); *Local 149, Boot & Shoe Workers Union, AFL-CIO v. Faith Shoe Co.*, 201 F. Supp. 234 (M.D. Pa. 1962) (holding that an employer who had been notified of the time and place of the arbitration hearing but failed to appear, waived its right to be present and to be heard).

For example, in one case, the Eighth Circuit found no reason to vacate an arbitration award where the defending party declined to participate. *Val-U Const. Co. of S. D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 579 (8th Cir. 1998). The contract between the parties stated that "[a]ll questions of dispute under this agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." *Id.* One of the Construction Industry Arbitration Rules of the American Arbitration Association provided that "the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement." *Id.* Accordingly, the Eighth Circuit found that the party "agreed, via the arbitration clause, that an arbitration hearing may proceed in its absence as long as it was given notice of the hearing and an opportunity to obtain a postponement of the hearing." *Id.* Moreover, the circuit court stated that a motion to compel arbitration, under Section 4 of the FAA was unnecessary, as "the procedural requirements of § 4 are permissive, not mandatory." *Id.* at 580.

Here, like in *Val-U Const.*, CBA Article XVIII Step IV provides that every applicable "grievance or controversy shall be submitted to binding arbitration under the Expedited Rules of

American Arbitration Association." Labor Arbitration Rule 26 specifically addresses arbitration in the absence of one of the parties:

> Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the other party to submit such evidence as may be required for the making of an award.

American Arbitration Association, Labor Arbitration Rules (Including Expedited Labor Arbitration Rules) 10 (2013). Further, Expedited Labor Arbitration Procedure Rule E1 stipulates that, "these procedures shall be applied as set forth below, in addition to any other portion of the Labor Arbitration Rules not in conflict with these expedited procedures."[3] *Id.* at 16. Accordingly, because Rule 26 does not conflict with any of the Expedited Rules, it applies to the applicable CBA between the parties in this dispute.

Here, on August 29, 2014, Petitioner sent notice of the forthcoming arbitration hearing, scheduled for September 18, 2014[4], to KRS and Canal Drive at their shared address. (Certification of Bradley M. Parsons, Ex. I.). The sufficiency of this notice is not disputed here. Further, Arbitrator Pierson determined that he had proper jurisdiction over this dispute

---

[3] The CBA is not clear which American Arbitration Association Rules apply; however, it appears that all of the American Arbitration Association Rules contain similar provisions. For example, R-32 of the Construction Industry Arbitration Rules and Mediation Procedures (updated Jan. 2015), uses identical wording:

> Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

[4] This hearing date was rescheduled from the 2011 hearing, which had been abandoned after Canal Drive completed its work and could not be found.

despite the absence of KRS at the September 18, 2014 hearing and he further stated, "Neither KRS nor Canal appeared at the hearing, despite Notice of Hearing issued by this Arbitrator and an opportunity to appear and present its position, and did not submit a response to the Carpenters' grievance." (Arbitrator's Op., p 11.) This Court agrees with the reasoning of other courts that have considered the issue, and finds that where the CBA permits *ex parte* arbitration, a motion to compel arbitration is not required.  Because the CBA here incorporated the American Arbitration Association rules, which permit *ex parte* arbitration upon proper notice, I find that Petitioners were not required to file a motion to compel arbitration pursuant to FAA Section 4 before continuing with the binding arbitration under the CBA.

### B. Procedural Challenges

Next, Respondents assert that the CBA had expired at the time of the alleged violation, and that petitioners failed to properly follow the grievance procedure steps required under Article XVII of the CBA. I find that these arguments either challenge the contract as a whole, or are procedural challenges and, therefore, should have been presented to the arbitrator. *See Howsam, Inc.*, 537 U.S. at 79; *Buckeye*, 546 U.S. at 440; *John Wiley & Sons*, 376 U.S. at 543; *New Jersey Bldg. Laborers Statewide Benefits Fund and the Trustees Thereof v. Am. Coring & Supply et al.*, 341 Fed. App'x at 818.

First, Respondents argue that because Petitioners attached to their petition for confirmation an older version of the CBA which was in effect from May 1, 2007 through April 30, 2012, and that because the alleged CBA violation of KRS d/b/a Canal Drive occurred in 2014, that the CBA was not in effect during this time. Respondents also assert that the alleged 2011 violation was not covered by the CBA, because the May 1, 2007 CBA was

not in effect at the time the SFA was signed. This argument is a direct challenge to the contract as a whole and epitomizes the type of procedural challenge that should have gone before the arbitrator in the first instance. *See Buckeye*, 546 U.S. at 444, 447–48 (finding any challenges to the contract as whole and the question of whether a contract is void or voidable must go to the arbitrator). The Third Circuit has previously held that a challenge concerning the expiration of the contract is a challenge that must be presented to an arbitrator and not the district court. *Becker Autoradio U.S.A., Inc. v. Autoradiowerk GmbH*, 585 F.2d 39, 45–46 (3d Cir. 1978); New *Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply*, 341 Fed. App'x 816, 820 (3d Cir. 2009). Thus, because of the procedural nature of this challenge to the validity of the CBA, it is not reviewable by this court in the absence of fraud, corruption, or evidence that the arbitrator exceeded his jurisdiction.

Furthermore, even if this challenge were reviewable by this district court, both the SFA and the CBA are clear that the Agreement between the parties will renew on a year-to-year basis unless mandatory written notice is provided seeking the termination of the agreement.[5] Thus, a subsequent CBA was effective from May 1, 2013 through April 30, 2016.

---

[5] SFA provides that:

> this Agreement shall continue in effect for the duration of the above refined applicable collective bargaining agreements and shall be deemed renewed by renegotiations or otherwise, including any amendments and/or modifications thereto and shall continue in full force and effect from year to year unless at least 90 days before termination of the then current collective bargaining agreement either party notifies the other in writing in writing by certified mail, return receipt requested, of cancellation of this agreement."

CBA Article XXXXIII Agreement and Termination provides that:

> this agreement shall become effective on the 1st day of May, 2013 and shall terminate on midnight April 30, 2016. At least ninety (90) days prior to the expiration date of this Agreement, either the Union

Because KRS did not provide the Union with written notice requesting termination of the Agreement, the Agreement was in effect during the time of the alleged violation.

Next, Respondents challenge Petitioner's adherence to CBA Article XVIII's defined grievance resolution procedures, alleging that Petitioners did not follow steps I–III by not contacting KRS after the August 2014 observation of KRS employees working as Canal Drive in Paramus, New Jersey. This is also a procedural challenge that should have been presented to the arbitrator.  The Third Circuit has found that "matters relating to compliance with the grievance procedure or a waiver [are] matters for the arbitrator." *Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 128 (3d Cir. 1994); *Bell Atl.-Pennsylvania, Inc. v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 164 F.3d 197, 201 n.4 (3d Cir. 1999). Thus, the question of whether the grievance resolution procedures followed after the 2011 observation of KRS employees working as Canal Drive at Manalapan were sufficient to allow the Union to resume the resolution procedures and request arbitration after the similar 2014 observation in Paramus, is a procedural question that should have been brought before Arbitrator Pierson at the arbitration hearing.

Here, Arbitrator Pierson determined that he had proper jurisdiction to decide the matter under CBA Article XVIII, Section 2, Step IV[6]. (Certification of Bradley M. Parsons, Ex. I;

---

or the Association shall serve upon the other in writing a statement incorporating therein any desired changes in wages, hours of work, working conditions, benefit, or new proposals to be incorporated in future Collective Bargaining Agreement to become effective subsequent to midnight April 30, 2016. They shall, within thirty (30) days thereafter, make every effort to commence negotiations prior to the termination of this Agreement.

[6]Step IV of the CBA states:

If the parties are unable to affect an amicable settlement or adjustment of any grievance or controversy, such grievance or

Arbitrator's Op., p.7 Ex. U-3—U-6). To make this determination Pierson reviewed the Union's exhibits illustrating that it had sent sufficient correspondence to KRS and Canal Drive's shared address to satisfy grievance resolution steps I–III following the September 2011 discovery of KRS allegedly doing business as Canal Drive in Manalapan, New Jersey. *Id.* Finally, appropriate notice of the arbitration hearing was given to Respondents. Thus, Arbitrator Pierson found the steps the Union took to be sufficient to grant him jurisdiction to decide this dispute, relating to the same activities at the L.A. Fitness site in Paramus.

The Court must affirm the arbitrator's decision so long as it is "based on an arguable interpretation of the collective bargaining agreement." *Dauphin Precision Tool*, 338 Fed. App'x at 222. This Court cannot substitute its own judgment for that of the Arbitrator. Here, I find that the Arbitrator's determination that Petitioner had completed Steps I–III of the CBA following the alleged violation of the CBA at Manalapan in 2011 is at least an arguable interpretation of the CBA. Accordingly, this determination is affirmed.

### C. Substantive Arbitrability Challenge

Respondents' final challenge to the Petitioner's motion for arbitration award confirmation relates to the language of the arbitration clause. Respondents argue that the clause itself must include language to indicate the parties' agreement to future entry of confirmation by a court. This argument is based on the language of FAA Section 9, which requires that "parties in their

---

controversy shall be submitted to binding arbitration under the Expedited Rules of the American Arbitration Association at the request of either party provided notice in writing of the intent to do so is given through the other party and the American Arbitration Association within thirty-five working days after Step III has been completed. One of the following three Arbitrators (J.J. Pierson . . . ) shall be selected who shall hear the matter and his decision will be final and binding on the contract to the Union and all employers.

agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S. C. § 9. Respondents further rely on the holding in *Varley v. Tarrytown Association*, a 1973 Second Circuit opinion which found that a district court did not have jurisdiction to confirm an arbitration award where the arbitration agreement between the parties did not expressly include language indicating both parties consented to a district court's confirmation of an arbitration award. *Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208, 210 (2d Cir. 1973). However, *Varley* has been discredited in the Second Circuit, *see I/S Stavborg (O. H. Meling, Manager) v. Nat'l Metal Converters, Inc.*, 500 F.2d 424, 425 (2d Cir. 1974), and has not been viewed favorably by district courts within the Third Circuit.[7] Further, *Varley* is clearly distinguishable from the present case.

In 1974, the year following the *Varley* decision, the Second Circuit decided *I/S Stavborg v. National Metal Converts*, which held that a district court had jurisdiction to enter an arbitration confirmation when a clause in the contract stated that, "[t]he decision of any two of the three (arbitrators) . . . shall be final." *I/S Stavborg*, 500 F.2d at 425. The Second Circuit stated that this clause "clearly expresses the intent of the parties that the arbitrators' decision as expressed in the award was to be 'final.'" *Id.* Further, in *Harris v. Brooklyn Dressing Corp.*, a district court within the Second Circuit determined that "*Varley*, while not expressly overruled, has been repudiated to such an extent . . . that it may be regarded as dead letter." *Harris v. Brooklyn Dressing Corp.*, 560 F. Supp. 940, 941–42 (S.D.N.Y. 1983) (citing *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir. 1974)); *see Kallen v. District 1199, National Union of Hospital & Health*, 574 F.2d 723, 725 (2d Cir.1978) (applying decision in *I/S Stavborg* that district court has

---

[7] The Third Circuit Court of Appeals has not yet considered the persuasive value, or lack thereof, of *Varley*.

jurisdiction to confirm an arbitrator's award when contract provides that award is to be "final"). Like courts in the Second Circuit, courts in the District of New Jersey, along with other district courts in the Third Circuit, have chosen to follow the holding of *I/S Stavborg* over *Varley*. *See, e.g.*, *New Jersey Bldg. Laborers' Statewide Ben. Funds v. Newark Bd. of Educ.*, No. CIV. 12-7665 FSH, 2013 WL 5180433, at *3 (D.N.J. Sept. 13, 2013)(finding *Varley* not to be "persuasive authority," and following *I/S Stavborg*); *Ingvoldstad v. Kings Wharf Island Enters.*, 593 F. Supp. 997, 1002 (D.V.I. 1984) (explaining that several cases more recent than *Varley* "opt in favor of permitting entry of judgment based on implicit language and the conduct of the parties."); *see also Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 347 (D.N.J. 1997) ("language that indicates the award will be final and binding implicitly permits Federal court intervention to compel compliance").

Thus, like both the Second Circuit and other district courts within the Third Circuit, this Court will not follow the *Varley* decision and instead will use the test put forward by *I/S Stavborg*. Applying the reasoning in *I/S Stavborg* to the present case, consent to arbitration confirmation can be inferred by this Court based on the language in CBA Article XVIII, Section 2, Step IV that "any grievance or controversy . . . shall be submitted to *binding arbitration*," and "one of the following . . . arbitrators (J.J. Pierson) shall be selected who shall hear the matter, and his decision will be *final and binding* on the contract to the Union and all Employers." (Certification of Bradley M. Parsons Ex. B., p. 23) (emphasis added).

I note that, even if *Varley* were favorably followed in the Third Circuit, the present case is factually distinguishable. The CBA in *Varley* lacked any language as to the binding nature of the arbitration in question. In contrast, the present case involves a CBA that expressly refers to "binding arbitration" twice. (Certification of Bradley M. Parsons, Ex. B, Article XVIII Step IV,

19

p. 23.) The fact that the arbitration is explicitly stated to be final and binding implies that district court confirmation is foreseeable and therefore was consented to by the parties at the time the SFA was signed. Thus, Respondents' argument that the CBA lacks necessary language to allow a court to confirm the award, and thus, bars this court's confirmation of the October 9, 2014 arbitration award at issue, is simply unavailing.


## V. CONCLUSION

Based on the foregoing reasoning, Petitioner's motion to confirm the arbitration award in the amount of $198,494.40 is granted. Judgment is entered against Respondent KRS Construction Group, LLC d/b/a Canal Drive Construction Inc.[8] An appropriate order shall follow.


Date:   August 13, 2015                                   /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge

---

[8] In the Prayer for Relief in the Petition, and in their proposed Judgment, Petitioners request that this Court adjudge KRS and Canal Drive as jointly and severally liable for not only the amounts included in the present Petition, but also for $482,769.43 owed to Petitioners by virtue of a previous award, confirmed on March 29, 2011. *New Jersey Regional Council of Carpenters v. KRS Constr.*, Civ. No. 11-00863-GEB-TJB (D.N.J. March. 29, 2011). However, this additional award was not addressed by Arbitrator Pierson in the present action. Moreover, the award was confirmed in a separate case by a different judge. Thus, this request will not be included in the judgment before me.